UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Mar 11  11 05 AM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

NORTHFIELD INSURANCE COMPANY,      :
                      Plaintiff   :
                                  :
                                  :
            v.                    :     3:02-CV-945 (EBB)
                                  :
DERMA CLINIC, INC., PATRICIA      :
O'REGAN BROWN; JOSEPH H. BURDEN;  :
HOLLY ALLEN; JANE DOE; AND        :
MARY ROE,                         :
                      Defendants  :

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Northfield Insurance Company ("Northfield") is,
and at all times relevant hereto was, an insurance company
incorporated under the laws of Minnesota, with its principal
place of business in that state, and duly licensed to underwrite
and sell policies of commercial insurance in Connecticut.

Defendant Derma Clinic ("DC") is, and at all times relevant
hereto, was a corporation organized and existing under the laws
of the State of Connecticut engaged in the business of offering
massage therapy to the public.

Patricia O'Regan Brown ("Brown") is, and at all relevant
times was, the President of DC.

On or about June 11, 2001, defendant Holly Allen ("Allen")
filed a lawsuit against Defendants DC and Joseph Burden
("Burden"), a massage therapist at DC, in the Connecticut
Superior Court for the Judicial District of Fairfield at

Bridgeport (the "_Allen_ Suit").

On or about February 20, 2001, Defendant Jane Doe ("Doe"), filed a lawsuit against DC, Brown, and Burden in the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport (the "_Doe_ Suit").

On or about September 9, 2002, Mary Roe filed a lawsuit against DC, Brown, and Burden in the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport (the "_Roe_ Suit").

At the times of the respective incidents as alleged in the _Allen_, _Doe_, and _Roe_ Suits, Northfield had in effect a policy of insurance naming DC, Brown, and Burden, as insureds, bearing policy number CP-383761 (the "Policy"), which had the effective dates of April 28, 2000 to April 28, 2001.

DC and/or Brown tendered the defense of the _Allen_, _Roe_, and _Doe_ Suits to Northfield under the Policy. Northfield thereafter tendered a defense to DC and Brown, pursuant to a reservation of rights. Northfield denied all coverage outright to Burden.

On or about June 3, 2002, Northfield filed the present Declaratory Judgment action which, by leave of the Court, was amended on or about December 31, 2002. Northfield seeks a Declaratory Judgment adjudicating that it has no duty to defend or indemnify DC, Brown, or Burden against the _Allen_, _Doe_, and _Roe_ Suits under the Policy. The present Motion is one for Summary Judgment on the issue.

DC and Brown have cross-moved for summary judgment,

asserting that Northfield is obligated by the terms of the Policy
to pay for DC's and Brown's defense in each of the <u>Allen</u>, <u>Doe</u>,
and <u>Roe</u> Suits.[1]/    The Local Rule 56(a)(1) Statement filed by DC
and Brown is identical to that of Northfield, with one exception
not relevant to this case.

As to genuine issues of material fact which allegedly
require a trial, DC and Brown assert that: "1. The Defendants
respectfully submit that the defendant JOSEPH BURDEN's intent
with respect to the allegations of wrongdoing asserted against
him in all three of the underlying complaints is an issue of
material fact as to which it is contended there is a genuine
issue to be tried. 2. The coverage that the Defendants expected
to receive under the subject insurance policy is an issue of
material fact as to which it is contended there is a genuine
issue to be tried."  Local Rule 56(a)(2) Statement by Defendants
Derma Clinic, Inc. and Patricia O'Regan Brown (April 11, 2003).

<u>STATEMENT OF FACTS</u>

The Court sets forth only those facts deemed necessary to an
understanding of the issues raised in, and decision rendered on,
these Cross-Motions for Summary Judgment.  The facts are
distilled from Northfield's Amended Complaint, seeking a
Declaratory Judgment, DC's and Brown's Complaint, also seeking a
Declaratory Judgment, the parties' memoranda of law, Their Local

---

[1]/ DC's and Brown's Memorandum of Law in Opposition To Plaintiff's
Motion for Summary Judgment also asserts that Burden is covered by the Policy.
*See* Memorandum at 2-3.  Burden has not opposed Northfield's declination of
coverage to him.

3

Rule 56(c) Statements, and exhibits filed therewith.

## A. **The Policy**

In the Policy Declaration Page, the business description of DC is entitled "massage therapist", as is in the Premium Classification.  The Policy also contains the following pertinent language:

> **Insuring Agreement**: We will pay those sums that the insured becomes legally obligated to pay as damages because of a negligent act, error or omission in the rendering or failure to render professional services of the type described in the Declarations.  (Section I.A.1)

> **Who is an insured**: An organization other than a partnership, joint venture or limited liability company.  (Section III.A.4.)

> Executive officers and directors are insured but only with respect to their duties as your officers or directors.  Id.

> Employees, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  (Section III.B.1)

> **Definitions**: Employee means any person employed by, leased to or volunteering services to you. (Section VI.C).  Employees are also insureds, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. (Section III (1).

> Executive officer means a person holding any of the officer positions created by

4

your charter, constitution, by-laws or
any similar governing document. Section
VI (D).

**Exclusions**: Punitive or exemplary damages.
(Section I B.13).

Any damages arising out of
any dishonest, fraudulent, criminal or
malicious act or omission of any insured or
"employee." (I.B.14).

## C. **The Allen Suit**

The controlling complaint in the Allen suit is the Amended
Complaint brought against DC and Burden dated August 16, 2001.
The Allen suit contains allegations that Burden was an employee
of DC on or about January 4, 2001.  In addition, Allen alleges
that, on or about January 4, 2001, she received a massage from
Burden at DC at which time "while engaged in the performance of
his duties as a massage therapist and within the scope of his
employment, Burden, without encouragement or inducement by the
Plaintiff, touched, groped and otherwise fondled various parts of
her body, including, but not limited to, her vagina, in an
overtly sexual manner, against Plaintiff's will and without her
consent.  In addition, Burden rubbed his crotch on and about the
Plaintiff's head, and further caused her to touch his crotch on
more than one occasion during the massage." See Amended
Complaint, First Count at ¶¶ 5 and 6.

The Second Count of the Allen Suit alleges intentional
infliction of emotional distress against Burden, and incorporates

5

by reference all allegations against Burden in the First Count. *Id.* at Second Count. The Third Count, which also incorporates by reference each and every allegation set forth against Burden, pleads that DC was negligent in that it failed to advise Plaintiff that it had received complaints concerning Burden's improper behavior; failed to properly investigate these complaints; failed to suspend Burden pending a complete investigation; failed to terminate Burden; continued to permit Burden to perform his duties as a massage therapist after it knew, or in the exercise of reasonable care should have known that Burden was sexually abusing its patrons; and failed to report said complaints and/or behavior to the organization responsible for licensing Burden.    *Id.* at ¶ 15 a), b), c), d), e), f).

The Fourth Count, incorporating all previous allegations against Burden, alleges gross negligence and contends that "[b]y acting or failing to act as alleged above, the Clinic acted with willful, wanton, reckless, intentional and/or deliberate disregard for the safety and the well being of the Plaintiff, and Plaintiff was damaged thereby."  *Id.* Fourth Count at ¶ 16.

The Fifth Count, similarly incorporating by reference all prior allegations, alleges negligent infliction of emotional distress against DC.

**D.    The Doe Suit**

The controlling Complaint in the <u>Doe</u> suit, brought against

6

Burden, DC, and Brown, is the Amended Complaint dated August 6, 2001.

Count One alleges sexual assault against Burden, DC, and Brown, asserting that Burden was employed by DC and Brown and that Brown was responsible for supervising and/or monitoring Burden.  On February 20, 2001, Burden performed a massage on Doe, at which time he sexually and physically assaulted her.  Doe Amended Complaint, Count 1 at ¶¶ 1-7.

Count Two incorporates by reference all of the allegations of sexual assault found in Count One.  This Second Count is entitled "As To Derma Clinic and Brown For Negligence".  In paragraph 9 (a)-(d), Doe postulates that DC and Brown knew of Burden's propensity to assault clients, but did nothing to protect her; they failed to warn her about Burden; they failed to adequately supervise Burden; and they failed to adequately monitor Burden.  Id.  Count Two at ¶¶ 1-8; 9(a)-(d).

Count Three again incorporates by reference all of the allegations of sexual assault found in Count One.  Count Three is entitled "As To The Defendants Brown and Derma Clinic For Violations Of CUTPA."  Doe contends that DC and Brown were aware of Burden's propensity to assault clients, and had been warned repeatedly of this fact prior to the date of her massage, February 20, 2001.  However, DC and Brown did nothing to protect Doe.  Id. Count Three at ¶¶ 1-8; 10-11.

E.    **The Roe Suit**

The controlling Roe Complaint is dated September 9, 2002.

Count One is entitled "Sexual Assault" and is brought against all three Defendants.  The Count alleges that: Burden was, at all times relevant thereto, employed by DC as a massage therapist and was acting as an agent, servant and/or employee of DC; on or about September 13, 2000, Burden performed a massage on Roe, during which massage he physically and sexually assaulted her; Roe immediately reported the assault, yet DC and Brown continued to employ Burden as a massage therapist.  Further, the Count alleges that, at all times relevant thereto, Burden was acting in furtherance of the business of DC and Brown and/or for their benefit.  Count One at ¶¶ 4-6, 9, 11.  However, after Burden was arrested in connection with both sexual assaults, Brown publicly sought to discredit Roe by stating to the press that she and her staff did not believe the charges against Burden. Count One at ¶ 10.

Count Two, entitled "Negligence", incorporates by reference the entirety of Count One.  Count Two asserts that DC and Brown: knew or should have known of Burden's propensity to have sexual contact with and/or to assault clients and failed to protect or warn Roe; failed to provide adequate safeguards to protect massage clients from illegal, improper, offensive, and unwelcome contact; failed to adequately train, supervise, and/or monitor Burden; and retained Burden when they knew or should have known of his propensity to have sexual contact with and/or assault clients.  *Id.* Count Two at ¶¶ 1-12.

Count Three, entitled "Intentional Infliction of Emotional

8

Distress" again incorporates the entirety of Count One, as does

Count Four, "Negligent Infliction of Emotional Distress". *Id.* at

Counts Three and Four at ¶¶ 1-11.

### LEGAL ANALYSIS

## I. The Standards of Review

### A. Federal Rule of Civil Procedure 56

In a motion for summary judgment the burden is on the moving
party to establish that there are no genuine issues of material
fact in dispute and that it is entitled to judgment as a matter
of law. Fed. R. Civ. P. 56(c). *See also* Anderson v. Liberty

Lobby, 477 U.S. 242, 256 (1986)(plaintiff must present
affirmative evidence in order to defeat a properly supported
motion for summary judgment). Although the moving party has the
initial burden of establishing that no factual issues exist,
"[o]nce that burden is met, the opposing party must set forth
specific facts demonstrating that there is a genuine issue for
trial." Sylvestre v. United States, 771 F.Supp. 515, 516
(D.Conn. 1990).

If the nonmoving party has failed to make a sufficient
showing on an essential element of his case with respect to which
he has the burden of proof at trial, then summary judgment is
appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
"In such a situation, there can be `no genuine issue as to any
material fact,' since a complete failure of proof concerning an
essential element of the nonmoving party's case necessarily

renders all other facts immaterial." *Id.* at 322-23.    *Accord,*
<u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14,
18 (2d. Cir. 1995)(movant's burden satisfied by showing if it can
point to an absence of evidence to support an essential element
of nonmoving party's claim).    In this regard, mere assertions and
conclusions of the party opposing summary judgment are not enough
to defend a well-pleaded motion.    <u>Lamontagne v. E.I. DuPont de
Nemours & Co.</u>, 834 F.Supp 576, 580 (D.Conn. 1993), *aff'd* 41 F.3d
846 (2d Cir. 1994).

The court is mandated to "resolve all ambiguities and draw
all inferences in favor of the nonmoving party. . . ."  <u>Aldrich
v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.), *cert.*
*denied*, 506 U.S. 965 (1992).    "Only when reasonable minds could
not differ as to the import of the evidence is summary judgment
proper."  <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), *cert.*
*denied*, 502 U.S. 849 (1991).    If the nonmoving party submits
evidence which is "merely colorable", or is not "significantly
probative," summary judgment may be granted.  <u>Anderson</u>, 477 U.S.
at 249-52 (scintilla of evidence in support of plaintiff's
position insufficient; there must be evidence from which a jury
could reasonably find in his favor).  *See also,* <u>Reeves v.
Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).

"[T]he mere existence of *some* alleged factual dispute
between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact.  As to materiality,

the substantive law will identify which facts are material. Only

disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of

summary judgment. Factual disputes that are irrelevant or

unnecessary will not be counted." <u>Anderson</u> 477 U.S. at 247-48

(emphasis in original).

    Naturally, this same standard applies to cross-motions for

summary judgment.  Each is examined independently under the

strictures noted above.

    **B.**  <u>**Construction of an Insurance Contract**</u>

    Under Connecticut law, which law governs this diversity

action, the construction of a policy of insurance presents a

question of law to be resolved by the Court.  <u>Moore v.</u>

<u>Continental Casualty Co.</u>, 252 Conn. 405, 409 (2000); <u>Imperial</u>

<u>Casualty & Indemnity Co. v.State of Connecticut, et al.</u>, 246

Conn. 313, 325 (1998). "Our standard of review with respect to

insurance contracts is also well settled. . . The

[i]nterpretation of an insurance policy. . . involves a

determination of the intent of the parties as expressed by the

language of the policy. . .[including] what coverage the . . .

[insured] . . . expected to receive and what the [insurer] was to

provide, as disclosed by the provisions of the policy . . . [A]

contract of insurance must be viewed in its entirety, and the

intent of the parties for entering it is derived from the four
corners of the policy . . . [giving the] words . . . their
natural and ordinary meaning . . . [and construing] any ambiguity
in favor of the insured . . . ." <u>QSP, Inc. v. The Aetna Casualty
and Surety Company</u>, 256 Conn. 343, 351-52 (2001)(citations and
internal quotation marks omitted).

### C.  **The Duty To Defend**

Under well-established principles of Connecticut law, an
insurer, under a liability insurance policy, has a duty to pay
for the defense of a lawsuit against its insured if the complaint
in the [underlying] suit states facts which appear to bring the
claim within the policy's coverage.  <u>Missionaries of Company of
Mary, Inc. v. The Aetna Casualty & Surety Co.</u>, 155 Conn. 104, 110
(1967).  *Accord* <u>Flint v. Universal Machine Co.</u>, 637 Conn. 637,
646-47 (1996).  The duty to defend has a broader aspect than the
duty to indemnify and does not depend on whether the injured
party will prevail against the insured.  <u>Missionaries</u>, 155 Conn.
at 110.  "If an allegation of the complaint falls even *possibly*
within the coverage, the insurance company must defend the
insured."  <u>West Haven v. Commercial Union Insurance Co.</u>, 894 F.2d
540, 544 (2d Cir. 1990), *quoting* <u>West Haven v, Liberty Mutual
Insurance Co.</u>, 639 F.Supp. 1012, 1017 (D.Conn. 1986)(emphasis in
original; internal quotations omitted).

### II.  **The Standards As Applied**

In their Memorandum of Law in Opposition to Northfield's

Motion for Summary Judgment, Defendants assert that "[t]he Plaintiff ignores, however, that the <u>Allen</u>, <u>Doe</u>, and <u>Roe</u> Suits all contain allegations against Burden squarely falling within the insuring language of the Policy.  Northfield also disregards the fact that the causes of action plead [sic] against Derma Clinic and Brown are separate and distinct claims from the claims asserted against Burden and are premised upon [their] own independent conduct, which conduct also falls within the insuring provisions of the Policy."  Finally, DC and Brown contend that "[i]n each of the three complaints, Burden is alleged to be an employee of Derma Clinic's engaged in the performance of his job duties at the time of the alleged wrongdoing. Thus, the allegations of the complaints squarely place Burden within the plain language of the Policy's definition of an insured, that is, an employee act[ing] within the scope of [his] employment . . . or while performing duties related to the conduct of [Derma Clinic's] business." Memorandum of Law, at pp. 2-3.

The Court finds that this analysis is based on a highly selective reading of the <u>Allen</u> and <u>Doe</u> Amended Complaints, the <u>Roe</u> Complaint, and the Policy, and rejects such analysis.

The critical portions of the Defendants' reference to the <u>Allen</u> Amended Complaint actually reads in full that " 5. At said time and place, while engaged in the performance of his duties as a massage therapist and within the scope of his employment, Burden, without encouragement or inducement by the Plaintiff, touched, groped and otherwise fondled various parts of her body,

including, but not limited to, her vagina, in an overtly sexual manner, against Plaintiff's will and without her consent. 6. In addition, Burden rubbed his crotch on and about the Plaintiff's head, and further caused her hand to touch his crotch on more than one occasion during the massage."

As to the Doe Amended Complaint, **nowhere** does Doe plead that Burden was a DC employee acting within the scope of his employment for DC.   Rather, the entire Amended Complaint is based on the sexual assault by Burden.

Regarding the operative paragraphs of the Roe Complaint, in paragraph 4, she alleges that Burden was employed by DC as a massage therapist "and acting as an agent, servant and/or employee of Derma Clinic." In Paragraph 6 of the Roe Complaint it is alleged that: "6.  During said massage, defendant Burden physically and sexually assaulted the plaintiff."

A.   **Natural Meaning of the Policy Language**

Burden, as an employee of DC, is covered by the Policy "only for acts within the scope of [his] employment by you or while performing duties related to the conduct of your business." Section III (B)(1).  Defendants' business, as set forth on the Declaration Page, consists of "massage therapist." Coverage under the Policy is provided for " . . . those sums that the insured becomes legally obligated to pay as damages because of a negligent act, error or omission in the rendering of or failure to render `professional services' of the type described in the Declarations."  Section I(A)(1).  Giving this language its

14

natural meaning in order to give effect to the apparent intent of the parties to the Policy, the Court holds that the natural meaning of the term "professional services" includes massaging clients only. Defendants seemingly ask this Court to torture the meaning of "professional services" to include sexually assaulting a client in the guise of massaging her.  The Court emphatically declines this invitation.

In <u>Cerrato v. American Home Insurance Co.</u>, 2001 WL 1911768 (D.Conn. April 2, 2001), the plaintiff brought a negligence claim against her attorney for sexually assaulting her when she met with him in order to be prepared to testify in court.  Chief Judge Chatigny was called upon to determine whether the attorney's professional liability insurance policy covered sexually assaulting a client while allegedly preparing her for testifying in court.  He answered the query in the negative. American Home's policy provided coverage for "all sums which the insured shall become legally obligated to pay as damages because of **any** claim . . . arising out of any act, error or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer. . . ". Id. at * 1 (emphasis added).  Chief Judge Chatigny held: "The natural meaning of "professional services" includes preparing clients for testifying in court.  However, it does not include assaulting a client in the guise of preparing her to testify." *Id. See also* <u>Physicians' Reciprocal Insurers v. Loeb, et.al.</u>, 738 N.Y.S.2d 68 (Sup.Ct.App.Div., N.Y. 2002) (alleged sexual

15

assaults by insured doctor against former patient and employee
did not fall within professional liability policy that covered
claims arising from the rendering of professional
services)(collecting cases).  This Court reiterates that the
"professional services" to be rendered in this case are those of
"massage therapist", pursuant to the Declarations Page.
Defendants argue that the Policy's definition of an insured
includes an "employee". . . "act[ing] within the scope of [his]
employment . . . or while performing duties related to the
conduct of [Derma Clinic's] business", and, that, therefore,
Burden is covered by the Policy.  The Court rejects any argument
suggesting that sexual assault is part of acting as a "massage
therapist" "rendering . . . professional services of the type
described in the Declarations. . . related to the conduct of your
business".  In accordance with the natural meaning of the
language in the Policy, for this first reason, then, Plaintiff's
Motion for Summary Judgment must be granted and Defendants'
Cross-Motion for Summary Judgment must be denied.

**B. Conduct Arising Out Of the Policy**

Further, the Policy concisely disallows coverage for "[a]ny
damages arising out of any dishonest, fraudulent, criminal or
malicious act or omission of any insured or `employee'".  As will
be discussed below, this particular disallowance, and others, are
applicable also to Defendants DC and Brown. [2]

---

[2] Defendants' also claim that "The Policy's definition of `your work'
with respect to Derma Clinic expressly includes the "providing of or failure

DC and Brown argue that their actions were not intentional and that the only claims set forth against them in the underlying actions are mere "negligence", which is a covered claim. A thorough analysis of the <u>Allen</u>, <u>Doe</u>, and <u>Roe</u> actions, however, demonstrates that the gravamen of the underlying actions against DC and Brown all arise out of Burden's sexual assaults committed under the guise of therapeutic massage. In each instance the allegations of sexual assault are incorporated by reference into the negligence claims. *See* <u>Allen</u> Amended Complaint at Third Count at paragraphs 1-13, Fourth Count at paragraphs 1-15, Fifth Count at paragraphs 1-16; <u>Doe</u> Amended Complaint at Counts Two and Three at paragraphs 1-8; <u>Roe</u> Complaint at Counts Two, Three and Four at paragraphs 1-11. Hence, the claims against DC and Brown are premised on those against Burden.

As noted above, the Policy excludes coverage for:

> "Any damages **arising out of** any dishonest, fraudulent, criminal or malicious act or omission of any insured or `employee.'" (1.B.14)(emphasis added).

> "Any damages **arising out of** the rendering of or failure to render professional services not described in the Declarations." (1.B.26)(emphasis added).

---

to provide warnings . . . ." Defendants' Memorandum in Support of Motion for Summary Judgment at 16. However, a complete and accurate reading of the Policy reveals that the defined term "Your Work" is to be found in exactly two places in the Policy: the Exclusions entitled "Damage to Impaired Property or Property not Physically Injured" and "Recall of Products, Work or Impaired Property." Policy at Section B - Exclusions at 11 and 12; Policy at Section VI -Definitions at E, O. "Your Work" is completely irrelevant to the issues of this case.

"To arise out of" means that the claim or injury "was connected with", "flowed from", or "was incident to ". <u>Hogle v. Hogle</u>, 167 Conn. 572, 577 (1975)(collecting cases). In <u>Velasquez Beltran, PPA et al., v. Armstrong</u>, 2003 WL 21718392 at * 3 (July 8, 2003), the Court held that, although pleaded in separate counts, "the facts surrounding the emotional distress claims are derivative of the medical malpractice claims." Resultingly, the Court held that there was a "single cause of action arising from a specific, single group of facts . . ." and refused to dismiss the two counts. *Id.* *Accord* <u>Duhaime v. American Reserve Life Ins. Co.</u>, 200 Conn. 360, 363 (1986)(CUTPA claim arose out of, and was derivative of, breach of contract claim).

In <u>Dunham v. Dunham</u>, 221 Conn. 384, 392-93, n. 10 (1992), the Connecticut Supreme Court wrote: "[W]e have long looked to the `group of facts which is claimed to have brought about the unlawful injury to the plaintiff'; <u>Bridgeport Hydraulic Co. v. Pearson</u>, 139 Conn. 186, 197 (1952); and have noted that `[e]ven though a single group of facts may give rise to rights for several kinds of relief, it is still a single cause of action.' *Id.*"

In <u>Middlesex Mutual Assurance Co. v. Rand</u>, 1996 WL 218698 (Conn.Super April 4, 1996), the defendant argued that, inasmuch as one count asserted in the underlying action was couched in terms of negligence, the insurance company was required to defend him. The primary cause of action, upon which <u>Middlesex</u> sought a declaratory judgment regarding its obligation to defend and

18

indemnify the defendant, was based on the defendant's alleged
sexual abuse of a minor child.  The fourth count of the complaint
alleged negligent infliction of emotional distress.  Inferring
that the act of sexually abusing a minor child demonstrated an
intentional act, which was not covered by the policy, the Court
also held that the derivative claim for negligent infliction of
emotional distress was not covered. "The fact that the
allegations in [the] complaint are described in terms of
`negligence' is of no consequence.  A plaintiff, by describing
her cat to be a dog, cannot simply by that descriptive
designation cause the cat to bark."   *Id.* at *3, *quoting and
following* <u>Peerless Insurance Co. v. Viegas</u>, 667 A.2d 785, 789
(R.I. 1995)(negligence claim derivative of sexual molestation
claim).

Therefore, based on these mandatory and persuasive
precedents, this Court holds that the claims pleaded against DC
and Brown arise from, and are derivative of, those pleaded
against Burden.  Hence, the Court holds that Northfield is under
no duty to defend the <u>Allen</u>, <u>Roe</u>, or <u>Doe</u> actions. For this second
reason, Plaintiff's Motion for Summary Judgment must be granted
and Plaintiff's Cross-Motion for Summary Judgment must be denied.

### 3.  <u>Criminal Acts Exclusion</u>

Defendants consistently avoid additional plain language
which declines coverage for damages arising out of, *inter alios*,
"criminal acts".  On July 8, 2003, Burden pleaded *nolo contendere*

19

to three criminal charges involving Allen, Doe, and Roe: first, on February 20, 2001 the defendant, while performing a massage on the female victim, did come in contact, without her consent, with her private parts in violation of the statute [Conn.Gen.Stat. Penal Code § 53a-73(a)(2)]; second, on September 13, 2000, while performing a massage, the defendant again did come in contact, without her consent, with her private parts, her vagina [same criminal statute]; third, on January 4, 2001, the defendant did place a female in a situation which was physically offensive to her [Conn.Gen.Stat. Penal Code § 53a-181(a)(6)]. *See* Transcript of <u>State of Connecticut v. Joseph Burden</u>, CR 01 00 92316S (July 8, 2003) at pages 1-2. The Honorable Susan S. Reynolds, accordingly, found Burden guilty on all three counts. *Id.* at page 10. At his sentencing before the Honorable John F. Kavenewsky, that judicial officer stated for the record that: "In my mind for purposes of these proceedings this was not accidental, incidental conduct on Mr. Burden's part. It was, and the PSI bears out that it was, deliberate and it was premeditated, apparently for the purposes of defendant's own sexual gratification." *See* Transcript of <u>State of Connecticut v. Joseph Burden</u>, CR 01 0092316 S (September 11, 2003) at 26. Resultingly, Burden was sentenced, *inter alios*, to give up any license he had as a massage therapist, to refrain from any and all practice of massage, to seek sexual abuse counseling, and to register under Connecticut's Sexual Offender Act, which

registration was to be disseminated to the public for a period of ten years, "for the protection of the community and the people in the community."  *Id.* at 27-28. [3]/

One Connecticut court has held that where a declaratory judgment action is brought **seeking the enforcement of a contractual provision**, a judgment of conviction is conclusive of the insured's guilt. Allstate Insurance Company v. Simansky, 45 Conn.Supp. 623, 627 (1998)(conviction based on plea of *nolo contendere* admissible in coverage dispute under criminal acts exclusion). [4]/ "The fact of the conviction has a collateral legal consequence on the enforcement of the policy exclusion [criminal acts]. For purposes of the exclusion, the conviction cannot be disregarded as if it did not happen. It did happen, and in so happening, triggered the exclusion." *Id.* at 629.

Yet again, Defendants misconstrue Plaintiff's legal argument. Regardless of their reading of Plaintiff's moving

---

[3]/ By comparing the dates as set forth in the present Motions, the Doe and Roe underlying actions, and the transcripts of the Court proceedings, this Court is convinced beyond peradventure that the guilty pleas were with regard to Allen, Doe, and Roe. Defendants' claim that "[t]he Plaintiff has offered no proof, however, that any of the former state court matters involved the same parties named herein" is hereby rejected.

[4]/ A plea of *nolo contendere* is defined as "a plea by which defendant does not expressly admit his guilt, but nonetheless waives his right to trial and authorizes the court for purposes of the case to treat him as if he wer guilty." State v. Daniels, 248 Conn. 64, 83 (1999)(Berdon, J., concurring), *quoting* North Carolina v. Alford, 400 U.S. 25, 35 (1970). In the present case, Judge Reynolds adjudicated Burden's guilt on three criminal counts, including two for sexual assault, after he pleaded *nolo contendere* and was found guilty as to each.

papers, it is **not** Plaintiff's position that a prior plea of *nolo contendere* may be admitted into **all** subsequent civil proceedings to establish either an admission of guilt or the fact of criminal conduct. "The Plaintiff's position is simply that Connecticut does give collateral estoppel to a conviction following a *nolo contendere* plea in an insurance coverage action." Plaintiff's Reply To Defendants' Response to Plaintiff's Supplemental Memorandum in Support of Motion for Summary Judgment at 2. "When neither the state's highest court nor its intermediate appellate courts have ruled on an issue, federal courts should give some weight to state trial court decisions." 17A J. Moore, *Moore's Federal Practice (3d Ed. 2003)* § 124.20[3], at 12. This Court finds <u>Simansky</u> to be well-analyzed and reasoned and supported by analogous Connecticut authority.

Connecticut courts have permitted the use of convictions following *nolo contendere* and <u>Alford</u> pleas in subsequent civil and administrative proceedings. In <u>Town of Groton v. United Steel Workers of America</u>, 254 Conn. 35 (2000), the Supreme Court held that a *nolo contendere* plea could be viewed as a conviction in the context of arbitration governing employment. In <u>Godin v. Godin</u>, 1995 WL 491420 at * 2 (Conn.Super.Ct. August 8, 1995), the court considered a conviction based on an <u>Alford</u> plea to be a material change in circumstances in a divorce and child custody proceeding. ("The fact that [the defendant] entered <u>Alford</u> pleas

22

to these charges does not alter the fact of conviction".)  In Kostrzewski v. Commissioner of Motor Vehicles, the Appellate Court upheld an administrative proceeding suspending a Connecticut driver's license following the motorist's Florida state conviction pursuant to a *nolo contendere* plea. 52 Conn.App. 326, 332 (Conn.App. 1999)("[T]he trial court properly determined that `the commissioner acts on the basis of an out-of-state conviction' and that it `does not matter how the conviction was obtained, whether by guilty plea, or by trial after pleading not guilty, or, as in this case, by a finding of the court after a plea of *nolo contendere*.'").  Connecticut state proceedings have also attached civil consequences to convictions following *nolo contendere* pleas in proceedings involving attorney licensing and disbarment.  *See* Connecticut Practice Book § 2-41(b)("The term `conviction' as used herein refers to the disposition of any charge of a serious crime . . . resulting from either a plea of guilty or *nolo contendere*.").  *See also* 43 Am.Jur.2d (2003) *Intentional or Criminal Acts Exclusion,* § 710 (citing Simansky, and collecting thirty-one similar cases nationwide).

In accordance with this wealth of authority, the Court holds that Burden's convictions following his *nolo contendere* pleas trigger the criminal acts exclusion of the Policy.  Once again, an "employee" is only covered "for acts within the scope of [his] employment by you or while performing duties related to the

conduct of your business."  DC and Brown are also bound by this, as Burden's convictions for sexual assault were not acts related to "[their] business" of massage therapist, nor did the sexual assaults "arise out of the rendering of or failure to render **professional services**" as described in the Declarations (emphasis added).  Exclusion 1.B.26.  For this third reason, Plaintiff's Motion for Summary Judgment is granted, and Defendants' Cross-Motion for Summary Judgment is denied.

### CONCLUSION

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  None exist in this case; a jury could not reasonably find coverage under this Policy.  As this Court has held above, regardless of the nomenclature of the <u>Allen</u> and <u>Doe</u> Amended Complaints, and the <u>Roe</u> Complaint, each cause of action against the several Defendants arises out of and is connected with the conduct of Burden and binds each.  Coverage also does not exist for DC and Brown under the natural meaning of the terms of the Policy, the reasoning for which the Court will not repeat here. [5]/

Accordingly, Northfield's Motion for Summary Judgment [Doc. No. 39] is hereby GRANTED and Defendants' Motion for Summary Judgment [Doc. No. 33] is hereby DENIED.

---

[5]/ The Court will not issue an advisory opinion on the laws of res judicata or collateral estoppel, as it is not necessary to the holding in this Declaratory Judgment action.

24

The Court finds and declares that Northfield is under no duty to defend or indemnify DC, Brown, or Burden in the underlying actions or for any other action arising out of the facts and circumstances described in Northfield's Second Amended Complaint.  *See* 28 U.S.C. § 2201.


SO ORDERED

ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this __11__ day of March, 2004.

25